ALBERT E. FINCH, PLAINTIFF IN ERROR, v. THE COUNTY
OF YORK, DEFENDANT IN ERROR.

1. **Taxes:** MONEY LOANED BY NON-RESIDENT. Plaintiff, a resident of the state of New York, came to Nebraska in April, 1880, remaining until July of that year. While here he loaned a large sum of money, taking notes and mortgages therefor. He then appointed an agent in this state to take charge of the business, collect the money as it matured, and reloan it, with full power to control it, reporting to plaintiff from time to time as the business progressed. In the year 1881, the property was assessed and taxed in the hands of his agent. *Held,* That it was properly taxed in this state.

2. ———: ———. Where personal property, such as notes and mortgages, belonging to a non-resident is placed in the hands of an agent in this state for the purpose of collecting and reloaning the money, using and controlling it without any special directions from his principal, the maxim that "movable things follow the person," does not apply. The *situs* of the property, for the purposes of taxation, becomes fixed in this state, and under the provisions of the revenue law, is taxable here.

ERROR to the district court for York county. The action was brought by plaintiff to recover taxes for 1881 paid by him under protest. Judgment below before NORVAL, J., dismissing the action.

*France & Harlan,* for plaintiff in error, cited: Cooley Taxation, 14–16. *Hoyt v. Commissioners,* 23 N. Y., 224. *Lyman v. Fiske,* 17 Pick., 234. Story Confl. Laws, 39, 42, 46.

*Scott & Gilbert,* for defendant in error, cited: *Jones v. Seward County,* 10 Neb., 154. *Goldgart v. People,* 106 Ill., 27. *People v. Gardner,* 51 Barb., 352. *Wilcox v. Ellis,* 14 Kan., 601. *People v. Trustees,* 48 N. Y., 390.

REESE, J.

For the purpose of this decision it may be conceded that the plaintiff in error was a citizen of the state of New York until the 4th day of July, 1881. In the month of April, 1880, he came into the county of York, in this state, remaining until July of the same year. When he came to York county he brought with him a large sum of money, and while there loaned it to citizens of York county, taking notes and mortgages therefor to secure the payment of the same. In the month of May he returned to New York, but left his notes and mortgages, and all his interests connected with the money brought by him to this state, in the hands of agents in York, giving them authority to collect in the money as it became due, and to reloan it on mortgage security, and, as stated in the stipulation of facts on which the case was tried in the district court, "in fact transact for him a regular loan business, and report from time to time" to the plaintiff. In the month of July, 1881, he determined to make York county his future home, and did so. Neither the money, notes, or mortgages were at any time withdrawn from York county. The notes and mortgages in the sum of $3,700.00 were assessed by the assessor of York precinct in the year 1881. The same property was assessed and taxed in the state of New York for the same year, and the taxes paid by him. The question here presented is, was the property taxable in York county?

The power of the state to tax all property within its own limits must be conceded. For the purposes of taxation and the collection of revenue the state possesses all

the attributes of sovereignty, and its power to tax property within its borders is ample and unlimited. But that power *is* limited to the persons and property within its jurisdiction. Ordinarily the *situs* of moneys and credits follow the domicile of the owner, and if he lives in one state, and has money owing to him from citizens or residents of another state, the state of his residence, only, has the power to tax such credits. And it has been held that where the credits were represented by notes and mortgages, and such notes and mortgages were not in his immediate possession, but were deposited in the state where the debtor resided for payment or collection, yet they were not taxable there for the reason that the notes and mortgages are not the debt itself, but the evidence of it, and the debt followed the owner. *People v. Eastman*, 25 Cal., 603. *Appeal Tax Ct. v. Patterson*, 50 Md., 368. *Latrobe v. Baltimore*, 19 Md., 13. The tax is not on the money, the land on which the security is taken, nor upon the paper upon which the promise and security are written, but upon the *chose in action*, or right to collect the debt. *State v Earl*, 1 Nev., 394. Desty on Taxation, 330. Cooley on Taxation, 43.

But the power of the legislature to separate, for purposes of taxation, the *situs* of personal property, whether of a tangible nature, or in the form of choses in action, from the domicile of the owner is unquestioned, and if such property, in any form, is within its jurisdiction it may tax it. *Swallow v. Thomas*, 15 Kan., 68. *Tappan v. Bank*, 19 Wall., 490. *Griffith v. Carter*, 8 Kan., 565.

Our attention is directed to section one of article nine of the constitution of this state, entitled "Revenue and Finance," with the suggestion that the section in itself does not provide for taxing the money or credits of non-residents, and that a fair construction would limit the power of the legislature to the taxation only of citizens of the state, and especially the money, mortgages, and notes of residents

only. The essential elements of this provision are that the legislature shall provide such revenue as may be needful by levying a tax by valuation, so that every person shall pay a tax in proportion to the value of his property. As we read it, no words of limitation, so far as residence is concerned, can be found; and as the constitution is generally understood to be a limitation of the powers of the legislature and the people, and not a grant, we conclude the powers of the legislature upon this question are untrammeled. We then look to the statute. Section one of chapter 77 of the Compiled Statutes of 1885, being the chapter on revenue, is as follows: "The property named in this section shall be assessed and taxed, except so much thereof as may be in this chapter exempted. *First.* All real and personal property in this state. *Second.* All moneys, credits, bonds, or stocks, and other investments, the shares of stock of incorporated companies and associations, and all other personal property, including property *in transitu* to or from this state, used, held, owned, or controlled by persons residing in this state. *Third.* The shares of capital stock of banks and banking companies doing business in this state. *Fourth.* The capital stock of companies and associations incorporated under the laws of this state."

Referring to the first clause of the above enumeration we find the language broad and comprehensive. *All* real and personal property *in this state* (exemptions excluded). If personal property is *in the state,* that is, has its *situs* here, so as to come under the jurisdiction of the state, it "shall be assessed and taxed." Unless this provision is limited by what follows in the second clause it would seem that our inquiry in that behalf might go no further. But does the second clause place a limitation on the first so far as moneys, credits, etc., are concerned, limiting it to persons "residing in this state?" We think it does to the extent that such property must be either *"used, held, owned,* or *controlled"* by residents. It may be either. But

not as claimed by plaintiff in error that the "owner must be a resident of the state." The second clause of the seventh section of the same chapter, in providing the manner in which property shall be listed, directs that the person listing his property "shall also list all moneys and other personal property invested, *loaned*, or otherwise *controlled* by him as agent or attorney, or on account of any other person or persons, company, or corporation whatsoever, and all moneys deposited to his order, check, or draft, and credits due from or owing by any person or persons, body corporate or politic, whether in or out of the county." This provision was evidently intended to reach such cases as the one at bar. The agent must list all property of the kind specified, as such agent. It is immaterial whether the debtor resides in or out of the county in which the agent resides. If he loans or otherwise controls the property, money, or credits he must list it.

The adjudications upon this question in this country have been substantially uniform, holding that if the money or credits are in the hands of an agent for the purpose of using, controlling, or investing, they have a *situs* at the residence of the agent if the principal be a resident of another state. We make the following quotations from some of the decisions: In *Goldgart v. The People*, 106 Ills., 25, in discussing the question here under consideration, it is said: "If the owner be resident in this state there is jurisdiction over his person and over his credits also, which in legal contemplation, in the absence of anything showing they have a *situs* elsewhere, accompany him. If the owner is absent, but the credits are in fact here in the hands of an agent for renewal or collection, with a view of reloaning the money by the agent as a permanent business, they have a *situs* here for the purpose of taxation, and there is jurisdiction over the thing." See also *Albany v. Parnell*, 11 N. C., 51. *State v. Co. Court*, 47 Mo., 594.

In the *People v. Trustees, etc.*, 48 N. Y., 390, it is held that, " when at the time of the making out of the assessment roll the agent of a non-resident has moneys belonging to his principal on deposit in bank, it is liable to be assessed and taxed although prior to the time appointed for the correction of the roll it has been withdrawn and used," and that "money due upon a contract for the sale of lands is personal property, and when such a contract belonging to a non-resident is in the hands of an agent who is a resident of an incorporated village, it may, for the purposes of municipal taxation, be assessed to the agent and taxed." The foregoing quotations are from the syllabus. In the body of the opinion it is held that, "notes and bonds and other contracts for the payment of money have always been treated in the law as personal property. They represent the debts secured by them. They are the subjects of larceny, and the transfer of them transfers the debt. If this kind of property does not exist where the obligation is held, where does it exist? It certainly does not exist where the debtor may be and follow his person. And while for some purposes in the law by legal fiction it follows the person of the creditor and exists where he may be, yet it has been settled that for the purposes of taxation this legal fiction does not to the full extent apply, and that such property belonging to a non-resident creditor may be taxed in the place where the obligations are held by his agent."

In *Wilcox v. Ellis*, 14 Kansas, 588, Wilcox had land in Illinois, and sold it, conditioned upon payment of the purchase price in installments at stated times. He was a citizen and resident of Kansas. The amount due him was $6,000. The notes were left in Illinois. The assessor in Kansas listed the demand as " credits " for taxation. It was held this claim was not taxable in Kansas. Judge Valentine, in writing the opinion, in referring to the maxim that " movable things follow the person," says: " The weight

of judicial authority seems to be, that for the purposes of taxation the maxim does not fully apply, even where the property is intangible."

*The Supervisors v. Davenport*, 40 Ills., 197, was a case similar to the one at bar in many respects. Defendant had a temporary residence at Pekin, Illinois, and transacted business for his father, Ira Davenport, Charles Davenport, and Martin Adsit, residents of New York, as their agent, loaning money, etc. The statute of that state (Illinois) provided that "all property, real or personal, in this state, all moneys, credits, investments in bonds, of persons residing in this state, or used or controlled by persons residing in this state, shall be entered on the list of taxable property," etc. The property, not only of defendant, but of Ira Davenport, Charles Davenport, and Martin Adsit, was held taxable in Illinois, the court saying that according to the holding in *Hoyt v. Commissioners*, 23 N. Y., 224, the property was not taxable in New York.

The leading case upon this question is *Catlin v. Hull*, 21 Vt., 152. Hammond resided in New York, and inherited from his father—a resident of Vermont—certain property, consisting of debts due from solvent debtors in Vermont, evidenced by promissory notes. He appointed the plaintiff (Catlin), a resident of Vermont, his agent to control and manage the property and collect and reloan from time to time as he should think proper, and allowed the plaintiff a specific salary for so doing. It was held that the property was properly listed to the plaintiff as "agent" of Hammond, and that it was taxable in Vermont. See also *Redmond v. Commissioners, etc.*, 87 North Carolina, 122, in which it was held that personal property of a non-resident (notes secured by mortgages on land) held by his agent in the state was subject to tax there, and that in such case the actual *situs* and control of the property was there, though the owner resided in another state. Also *The City of Albany v. Meekin*, 3 Ind., 481. *Foreman v. Byrnes*, 68 Ind., 247.

The ruling in *Hoyt v. Commissioners of Taxes, supra,* is peculiarly applicable to this case, because the statute upon which it is founded is very similar to the law of this state, and for the further reason that it is declarative of the law of the state of New York, where plaintiff paid taxes upon the property listed to him here; and by that decision, which was against the power of the state to tax one of its citizens upon capital invested in another state, it is clearly established that the payment was a voluntary one, and for which the state of New York had no claim. See also *People v. Gardner,* 51 Barb., 352. *Battle v. Mobile,* 9 Ala., 234.

By the foregoing it will be seen that a distinction must be maintained between cases of the kind at bar and that class of cases where the property taxed is not in the hands of an agent, and has no *situs* apart from the residence of the owner. Thus in *Hunter v Supervisors,* 33 Iowa, 376, it was held that a resident of that state who had deposited for safe keeping in Illinois promissory notes which he had never brought with him. to Iowa, was subject to taxation in Iowa, but the court held that a different rule would prevail if he had conferred authority upon some one as his agent to loan, manage, receive, and collect the same for him, citing *The People v. Gardner, supra.*

We therefore hold that the property was rightfully assessed and taxed in this state, and that the taxes cannot be recovered back.

The decision of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.