In the Matter of the Estate of EDITH KINGDON GOULD, Deceased.

Surrogate's Court, New York County, April, 1924.

Taxation — transfer tax — jewelry and personal effects are goods, wares and merchandise within Tax Law, § 220, subd. 2, as said subdivision existed on November 13, 1921, and are subject to transfer tax — jewelry kept in safe deposit vault in this state which is used only occasionally outside of state and personal effects kept at residence in this state are permanently here — order fixing tax on transfer of property subject to power of appointment should provide that minimum tax on remainders will be nothing — fact that transfer may be taxed in another state does not relieve estate.

The jewelry and personal effects of the decedent, who at the time of her death was a resident of New Jersey, which were kept within this state, are goods, wares and merchandise within this state within the meaning of subdivision 2 of section 220 of the Tax Law as it existed on November 13, 1921, the date of the death of the decedent, and are subject to a transfer tax under said subdivision.

The jewelry and personal effects of the decedent were permanently within this state since it appears that her jewelry was kept in a safe deposit vault in this state and her personal effects were kept in a residence in this state, although some of the jewelry and personal effects were occasionally taken without the state for use there.

There is a possibility that no tax will be assessed upon the transfer of the property subject to the powers of appointment and the order fixing the tax should contain a provision that the minimum tax on the remainders subject to these powers will be nothing.

The fact that a transfer may be subjected to a tax in a foreign jurisdiction does not relieve the estate from paying a transfer tax here; the question of double taxation is exclusively for the legislature.

TRANSFER TAX proceeding.

*Taylor, Knowles & Hack (T. Ludlow Chrystie, Joseph McCloy* and *Otto A. Hack,* of counsel), for the executor.

*Charles A. Curtin,* for the State Tax Commission.

FOLEY, S.    The executor has appealed on four separate grounds from the order fixing the transfer tax.    Mrs. Gould died on November 13, 1921, a resident of Lakewood, N. J.    Her will was admitted to probate in that state.    She left a total estate of approximately $2,000,000.    At the time of her death she was possessed of jewelry, household furnishings and personal effects worth about $900,000, which were located in the state of New York.

The first ground of appeal involves the question as to whether the jewelry and personal effects were taxable under the provisions of section 220, subdivision 2, of the Tax Law.    The form of that subdivision as it existed at the date of death provided for the taxation of " goods, wares and merchandise within this state " in the estate of a non-resident.    The appeal on this ground is overruled.    *Matter of Brooks*, 119 Misc. Rep. 738; *Matter of Shoemaker*, N. Y. L. J. June 22, 1921.    I held in the former case that the words " goods, wares and merchandise " included chattels of the nature of those involved here.    I pointed out also that these words were synonymous with the definition of the words " tangible property " formerly contained in section 243 of the Tax Law. The definition was simply transferred from the latter section and embodied in section 220.    I held further that the phrase " goods, wares and merchandise " was not intended by the legislature to apply solely to the stock in trade of a merchant.    At the time of the amendment made by chapter 626 of the Laws of 1919, section 220 already included a provision taxing " capital invested in business in the state by a nonresident of the state doing business in the state either as principal or partner."    This provision was likewise in effect at the date of death of Mrs. Gould.    The word " capital " has usually been defined as the money and property invested or used in a business.    Under the contention of the executor the meaning of the phrase " goods, wares and merchandise " would be included within the words " capital invested in business in this state," and the legislature would be charged in its amendment with a meaningless repetition of language.    In order, therefore, to give effect to each provision of the statute, the words must be construed in their broader sense as applying to tangible personal property, and not in their narrower import as the " stock in trade of a merchant."    20 Cyc. 1272.    The appraiser, therefore, properly found the transfer of these articles to be taxable in this estate.

The second ground of appeal is that the jewelry and personal property were not *permanently* within the state of New York. At the time of her death Mrs. Gould had in a safe deposit vault in Tiffany & Company, jewelry of the value of $860,478.    She

had jewels, approximately of the value of $1,300, at Cartier's and there were in her New York residence, No. 857 Fifth avenue, jewelry, furniture and other personal effects of an additional $12,000 in value. The testimony clearly establishes that her jewelry was usually kept at Tiffany's for safekeeping. Her custom was to withdraw specific articles for her personal adornment from time to time from the vault for use at social functions in New York or at Georgian Court, her Lakewood residence, or upon her travels. In the winter season she spent most of her time in New York city, visiting Lakewood for the weekends. During the summer the greater part of the jewelry remained continuously in the vault. Mrs. Gould rarely visited the safe deposit vault. The general supervision and care of the jewelry was intrusted to her companion, Miss Cortis. In the eight months preceding the date of death of Mrs. Gould, Miss Cortis made but two visits to Tiffany's, one on May 4, 1921, and the other on November 4, 1921. The safe deposit box there was originally rented on May 8, 1908. It conclusively appears, therefore, from the evidence that the jewelry at Tiffany & Company was habitually kept within this state for a period of fourteen years. A similar conclusion follows from the facts surrounding the maintenance of the articles at Cartier's and at her New York city mansion. In *Matter of Romaine*, 127 N. Y. 80, where the language of the taxing statute was similar to the provisions of the law as it existed at the date of death of the decedent here, Judge Vann said: "Where the property of a non-resident is habitually kept, even for safety, in this state, we think that the statute applies both in the letter and spirit. Such property is within this state in every reasonable sense, receives the protection of its laws and has every advantage from government, for the support of which taxes are laid, that it would have if it belonged to a resident." See, also, *Matter of Tiffany*, 143 App. Div. 327; affd., 202 N. Y. 550; *Matter of Whiting*, 150 id. 27; *Matter of Wall*, 105 App. Div. 643. The appeal on this ground must, therefore, be overruled.

The third ground of appeal is sustained. There is a possibility that no tax will be assessed in Mrs. Gould's estate upon the transfers of the property subject to the powers of appointment. If these powers should be exercised they will be taxable in the estates of the donees. The order fixing tax should be modified by incorporating therein a provision that the minimum tax on the remainders, subject to these powers, would be nothing. *Matter of Perkins*, 119 Misc. Rep. 21; *Matter of Curran*, N. Y. L. J. March 25, 1924.

The fourth ground of appeal, that the statute creates a system

of double taxation of the property both in New York and New Jersey, is overruled. The wisdom of such a policy and any hardship involved are exclusively for the legislature. Legislation imposing a double burden gives no cause for complaint on constitutional grounds. *Blackstone* v. *Miller*, 188 U. S. 189.

Submit order accordingly.

Decreed accordingly.